IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.     Case No. 2:22-cr-00097

**RANDY PRICE**

**DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on a single-count indictment filed May 3, 2022, charging defendant with being a convicted felon unlawfully in possession a firearm with an obliterated serial number on July 16, 2019.  *See* Dkt. No. 1.  Defendant contends that there was no reasonable suspicion, much less probable cause, supporting the traffic stop initiated by the Charleston Police Department on July 15, 2019, such that the warrantless stop violated the Fourth Amendment and all fruits from that seizure should be suppressed.

Separately, authorities conducted a custodial interrogation of the defendant without advising him of his *Miranda* rights, which produced a number of inculpatory statements attributed to defendant in violation of the Fifth Amendment.  The fact authorities later *Mirandized* defendant and obtained a statement repeating his previous inculpatory statements did not cure the taint of the original constitutional violation – such that all inculpatory statements attributed to defendant from the night of his stop should also be suppressed.

*Factual Background*

Defendant's charge stems from a warrantless traffic stop conducted shortly before midnight on July 15, 2019, in Charleston, West Virginia. Immediately before the stop, defendant was operating his mother's Ohio registered (DPS 3649) gold Chevrolet Cavalier in a lawful manner - coming Northeast across the Patrick Street Bridge. Defendant was wearing a seatbelt; the car's headlights, break lights, and signal lights were all functioning properly. Defendant was not exceeding the speed limit, and properly signaled to make a right turn from Patrick Street to pass the Drug Emporium strip center and proceed lawfully Southeast on Kanawha Boulevard into downtown Charleston.

Charleston Police Department Patrolman Ryan Boone was traveling Southwest on Patrick Street in a CPD marked SUV at the same time Price's vehicle was traveling Northeast having come over the Patrick Street Bridge. Boone braked his vehicle, and made a u-turn into the lane Price had signaled from to turn right toward Kanawha Boulevard.

Boone got directly behind Price's vehicle and followed it. In-car video shows that Price did not exceed the posted speed limit, cross any lane lines, or otherwise unlawfully operate the vehicle. According to Boone's narrative report, and ATF S/A Jonathan Weaver's subsequent report of investigation, Boone stopped Price's vehicle for "improper display of registration"/"the registration being improperly displayed". "The registration had a border around it with the words 'Great Lakes' covering the state to which it belonged and had what appeared to be the registration light dangling

down in front of the plate obstructing it". Boone subsequently explained to a supervisor on the scene "no, no, …I was behind him … they came off the Patrick Street Bridge, I got behind them, I can't read the top of their plate, I just assumed it was Ohio because it was red."



As Boone was following the Cavalier, he was still able to call in the license plate via his radio. He was able to do so effectively, as he received a response that the Ohio tag was valid until May 2020. As Price activated his left turn signal near the Marathon Station on Kanawha Boulevard, Boone activated his blue lights to stop and seize the vehicle. Boone did so at 11:27:21 p.m. Boone had made the abrupt u-turn to follow Price at 11:26:29 p.m. Boone, therefore, had been following Price for less than a minute before initiating the traffic stop. Again, in-car video captures a radio response to Boone noting that the tag was valid with an expiration date May of 2020.[1]

---

[1] Relevant in-car video footage will be presented to the Court, consistent with defendant's description of events, during the evidentiary hearing on defendant's motion.

*[remainder of page deliberately left blank]*



This response was made just as Price began making the left turn off Kanawha Boulevard onto Florida Street just past the Marathon station.



Page **4** of **8**

Price, however, then failed to stop – which led to a vehicle pursuit that lasted less than three minutes. Price pulled over under the abandoned railroad trestle bridge near the 1000 Block of Central Avenue in Charleston and fled the car on foot. As Boone pursued Price on foot, the CPD SUV rolled into the back of Price's vehicle.

CPD officers subsequently searched the car and found a small handgun with a purported obliterated serial number.[2] Authorities also supposedly found 14 rounds of .25 caliber ammunition. The officers then spent more time clearing the handgun on the trunk of Price's car, using a knife, than Boone had spent for the entire vehicle chase. CPD officers searched Price's car for over half an hour, incident to which Price was found and taken into custody.

Several inculpatory statements have been attributed to Price. Price purportedly told officers at the scene that he fled because he knew he had an active warrant out of Ohio. Price also purportedly told officers that he knew that he was a convicted felon and that he knew the seized firearm was in his vehicle. Once transported to the CPD, Price was interviewed. He allegedly stated he ran because he was scared and didn't want to get caught with a gun and go back to prison. Price allegedly stated he purchased the gun one month prior to his arrest in Wayne County, West Virginia. Price further purportedly acknowledged both his extensive criminal history, and the fact he was prohibited from possessing firearms.

---

[2] The gun turned out to be a .25 caliber Raven Arms P-25 semi-automatic pistol. Boone's narrative report valued the handgun at $ 70.00, and the ammunition taken from it or otherwise found in the car at $ 5.00.

Price was <u>not</u> *Mirandized* at the scene of his arrest (he <u>was</u> arrested, as opposed to being temporarily detained). Price was repeatedly questioned by officers, while initially being commanded to lay face down on the pavement, with his hands cuffed behind his back. Among other things, he stated why he ran, that he knew there was a warrant out for his arrest (from Ohio), he admitted he knew the gun was in his car, and that he knew he was a convicted felon.

Price was not actually *Mirandized* until he was interviewed by two officers at the CPD after 1:20 a.m. on July 16, 2019. Price gave an approximately twenty-five minute recorded statement. Price repeated matters he had already told to officers before he was *Mirandized* – such as the fact he knew he was a convicted felon, when he obtained the firearm, who he obtained it from, and why.

*Argument*

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The primary purpose of the Fourth Amendment is "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Weaver*, 282 F.3d 302 (4th Cir. 2002). A seizure warranting Fourth Amendment protection occurs when, in view of the totality of the circumstances surrounding the "stop," a reasonable person would not feel free to leave or otherwise terminate the encounter. *Id*. A traffic stop constitutes a seizure of persons within the meaning of the Fourth Amendment. Such a seizure is only constitutionally reasonable where the police have probable cause to believe that a

traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 809-810 (1996); *United States v. Sowards*, 690 F.3d 583, 588 (4th Cir. 2012); *United States v. Boggess*, 444 F. Supp.3d 730 (S.D.W.Va. 2020).

The Fifth Amendment separately provides that "no person … shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. Pursuant to *Miranda v. Arizona*, in order to ensure the Fifth Amendment protection is properly afforded, a citizen held in custody must be warned that they have the right to remain silent, that any statement they make may be used as evidence against them, and that they have the right to the presence of an attorney. *See* 385 U.S. 436, 444 (1966). Any statements obtained from a suspect in violation of *Miranda* are inadmissible in the government's case-in-chief. *United States v. Sullivan*, 138 F.3d 126, 130 (4th Cir. 1998).

Defendant contends, and will further demonstrate during the hearing on his motion, that Patrolman Boone lacked a reasonable suspicion or probable cause to seize his vehicle. There was nothing invalid about Price's vehicle's registration. As a consequence, the unconstitutional seizure of Price's vehicle – which ultimately led to the subsequent seizure of the firearm and ammunition therefrom, should be suppressed from being used by the United States at defendant's trial.

Defendant further contends that Price's un-*Mirandized* inculpatory statements once under arrest at the scene must also be suppressed. Price was not temporarily detained pending investigation of a traffic violation at the time he was questioned and made inculpatory statements. Instead, he was hand-cuffed, face

down on the ground under arrest, while being questioned by officers. So he was plainly subject to coercive, custodial interrogation, under circumstances which did not include his being *Mirandized*. That he was given *Miranda* warnings over an hour later, after having repeatedly given inculpatory statements in response to law enforcement custodial questioning, did not cure his repeating his prior inculpatory statements after the warning was given.

As the driver of the car seized by Boone, and as the arrested un-*Mirandized* declarant responding to custodial questioning, defendant has standing to suppress both the firearm found in the car and the substance of his inculpatory statements. For the reasons stated herein, defendant's motion should be granted.

Date: September 12, 2022.     Respectfully submitted,

**RANDY PRICE**

By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/ Lex A. Coleman**
Lex A. Coleman, WV Bar No. 10484
Senior Litigator, Assistant Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: lex_coleman@fd.org