### IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                            **CRIMINAL NO. 2:22-cr-00097**

**RANDY PRICE**

### RESPONSE IN OPPOSITION TO
### DEFENDANT'S MOTION TO SUPPRESS ON FOURTH AMENDMENT GROUNDS

Officers with the Charleston Police Department ("CPD") arrested Defendant Randy Price ("Price") after he fled and led them on a car and then foot chase late one summer night. Price now moves to suppress evidence that was seized from his car after he had already abandoned it, including a firearm and ammunition, arguing that there was no basis for the attempted traffic stop. (ECF No. 26, "Motion.") However, when as here, an individual attempts to evade seizure and abandons evidence prior to submission to police authority, the Fourth Amendment's exclusionary rule does not apply. As such, Price's Motion should be denied.

### RELEVANT FACTUAL BACKGROUND

The relevant facts are not in dispute in this case.[1] At approximately 11:26 p.m. on July 16, 2019, CPD Officer Ryan Boone noticed a Chevrolet Cavalier traveling north and crossing the Patrick Street Bridge in Charleston, West Virginia, which then began traveling east on Kanawha Boulevard West. Officer Boone observed that the car's registration was improperly displayed because it had a license plate frame across the top obscuring the name of its issuing state and also had what appeared to be a registration light dangling down in front of the plate.

---

[1] A copy of CPD Officer Ryan Boone's dash cam video has been attached hereto as Exhibit 1, and a copy of his body worn camera has been attached hereto as Exhibit 2. Personal identifiers have been audio-redacted in Ex. 2.

Officer Boone activated his emergency lights about a minute after first observing the improper display of registration in order to conduct a traffic stop. Instead of pulling over, Price ignored the flashing lights and sped away by turning north on Florida Street and continuing to travel in that direction. Officer Boone proceeded to pursue Price's car. At times during Price's flight, the dangling registration light caused some of the plate numbers to be obscured as the police car lights reflected off of it. During the pursuit, Price drove slowly but erratically, almost hitting a bystander on a bicycle twice as he fled from police.[2] At another point, Price drove violently into a curb before running off the road and stopping the car near a concrete block at the bottom of a train trestle near the 1000 block of Central Avenue.

Price then bailed from the car through the driver's door, which was left flung open. He also left a female passenger behind in the front passenger seat. After a brief foot chase during which Price darted west toward Florida Street down an alley, Officer Boone tackled and arrested him just prior to reaching Florida Street.

Officers then searched Price's car and seized a .25 caliber Raven Arms MP-25 pistol with an obliterated serial number, as well as some ammunition. Price, who has underlying Ohio state felony convictions for involuntary manslaughter and aggravated robbery, was charged in the instant Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).

---

[2] After arresting Price, Officer Boone obtained a witness statement from that individual, who stated that Price nearly struck him twice with his car—first at the corner of Florida and Centra, and then again at the corner of Florida and Madison. *See* CPD Investigative Statement Form, which is attached hereto as Exhibit 3; *see also* W. Va. Code 61-5-17(f), which states in pertinent part that "[a] person who intentionally flees or attempts to flee in a vehicle from a law enforcement officer, probation officer, or parole officer acting in his or her official capacity after the officer has given a clear visual or audible signal directing the person to stop, and who operates the vehicle in a manner showing a reckless indifference to the safety of others is guilty of a felony . . ."; W. Va. Code § 17C-5-3 (identifying reckless driving as misdemeanor offense).

**DISCUSSION**

Price argues that there was neither reasonable suspicion nor probable cause to stop his car based on the officer's observed traffic violation.[3] However, the Court need not look to whether there was a basis to stop Price's car in order to deny his Motion. That is because evidence abandoned during the course of flight where an individual has not yet submitted to a show of authority cannot be considered to be fruit of any unlawful seizure. Here, the undisputed facts demonstrate first, that Price was not seized when the officer attempted to pull him over because he failed to submit to the officer's authority and was only seized at the point he was actually physically apprehended minutes later. Second, that he had already abandoned any property he had in the car when he took off from the car on foot and was arrested shortly thereafter.[4]

1. **Price was not seized until he was physically apprehended after fleeing on foot.**

Absent an application of physical force, or submission by the suspect, pursuit of a suspect who has failed to yield to a show of police authority does not constitute a seizure. *See United States v. Stover*, 808 F.3d 991, 1001 (4th Cir. 2015) ("We simply recognize that, under controlling Supreme Court precedent, when an individual attempts to evade a seizure and reveals evidence or

---

[3] Had Price actually pulled over when Office Boone initiated the traffic stop, he would have been seized at that point. However, his challenge of the traffic stop itself would still fail. As the district court for the Northern District of West Virginia has noted "there is a paucity of authority concerning" W. Va. Code § 17A–3–15 and that "no federal or state court in West Virginia has elaborated on the contours of this particular traffic offense." *United States v. Harvey*, 901 F. Supp. 2d 681, 687 (N.D. W. Va. 2012) (finding fact that registration was displayed in rear window in manner in which "it was not clearly visible" provided officer with probable cause to stop defendant's car). Nevertheless, courts have upheld factually analogous traffic violations as the one that Officer Boone observed. *See generally United States v. Mimms*, 155 F.3d 562 (4th Cir. 1998) (trooper had probable cause to believe defendant was committing traffic violation because he observed that defendant had clear plastic cover over his license plate making plate harder to read, in violation of West Virginia law); *see also United States v. Silva*, No. 2:15-CR-1, 2015 WL 1967284, at *7 (N.D. W. Va. Apr. 30, 2015) (finding trooper had probable cause to believe that defendant was violating W. Va. Code 17A–3–15(b) because he observed registration sticker on defendant's license plate was obscured by metal frame around plate).

[4] Price does not challenge the search, but he would lack standing to do so based on his abandonment of the car and its contents, *see* § 2, *infra*.

contraband prior to submission to police authority, the Fourth Amendment's exclusionary rule does not apply."); *see also Broyer v. Inyo County*, 489 U.S. 593, 596 (1989) (police activated emergency lights and chased driver for 20 miles; driver was not "seized" until he crashed into police blockade); *Michigan v. Chesternut*, 486 U.S. 567 (1988); *United States v. Hernandez*, 27 F.3d 1403 (9th Cir. 1994) (police called out to defendant to stop, defendant hesitated, police scuffled with defendant, who escaped and ran; no seizure until defendant apprehended after chase); *United States v. Santamaria*, 968 F.2d 980, 983 (9th Cir. 1992) (finding that no seizure occurred until defendant crashed car after police activated their lights and defendant sped up and led police on chase (citing *California v. Hodari*, 499 U.S. 621 (1991))).

The seminal apposite case on this issue is *California v. Hodari*, 499 U.S. 621 (1991). In *Hodari*, the defendant fled when he saw the police and threw down a small rock which later proved to be cocaine. *See id.*, at 622-23. The Court held that the suspect was not seized until the police apprehended him, and the abandoned cocaine was not the fruit of the suspect's seizure. *See id.*, at 629; *see also United States v. Cureton*, 367 F. App'x 434, 437-38 (4th Cir. 2010) (finding that like defendant in *Hodari*, Cureton was not seized before or during his flight, and because he had not been seized at the time he abandoned the handgun; he gave up his expectation of privacy by abandoning his property during flight).

Here, Price was not seized until he was physically apprehended. *See United States v. Brown*, 401 F.3d 588, 594 (4th Cir. 2005) ("We are mindful of the general rule that a seizure "requires either physical force ... or, where that is absent, submission to the assertion of authority."); *United States v. Wiggins*, 97 F.3d 1450, at *2 (4th Cir. 1996) (finding denial of motion to suppress proper because defendant was not seized until officers apprehended him and because he abandoned crack cocaine before seizure); *United States v. Doe*, 952 F.2d 397, at *1 (4th Cir.

4

1991). Price failed to submit to Officer Boone's initial showing of authority—the initial activation of his emergency lights—and was not seized until the officer actually physically apprehended him near Florida Street minutes later during the subsequent foot chase. Moreover, similar to the defendant in *Hodari*, prior to being seized, Price had already abandoned his property by jumping out of the car and leaving behind in it the firearm and ammunition that were later recovered.

### 2. A person who abandons property has no standing to challenge its seizure or search.

A person who abandons property has no standing to challenge its seizure or search. *See e.g., Abel v. United States*, 362 U.S. 217, 241 (1960) ("There can be nothing unlawful in the Government's appropriation of ... abandoned property."); *United States v. Small*, 944 F.3d 490, 501-04 (4th Cir. 2019) (cell phone discarded by defendant as he fled police following crash of his vehicle properly searched as abandoned property); *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th. Cir. 1995) ("The law is well established that a person who voluntarily abandons property ... is consequently precluded from seeking to suppress evidence seized from the property."); *United States v. Tate*, 821 F.2d 1328, 1330 (8th Cir. 1987) (defendant abandoned unlocked van on a public highway when he fled).

In this case, after leading the police in a car chase, Price then fled on foot, abandoning the car and its contents. This included the recovered firearm and ammunition. Whether an individual has abandoned property is not determined by asking "whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy . . . ." *Small*, 944 F.3d at 502 (internal citations omitted). This determination is based upon an analysis of "the defendant's actions and intentions." *Id.* "Intent [to abandon] may be inferred from words spoken, acts done, and other objective facts." *Id.*

The objective facts of this case establish that Price intended above all things to evade capture. He led the police on a several minutes long car chase, recklessly endangering the safety of at least one passerby. *See* Exhibit 3. He then jumped out of the car and continued to try to evade capture by fleeing on foot. His evasive actions established that his intent was to escape so that police would be unable to identify him or to associate him with the car and its contents, including a firearm he was prohibited from possessing. *See United States v. White*, No. 2:19-CR-13, 2020 WL 2477965, at *3 (N.D. W. Va. Jan. 24, 2020), *report and recommendation adopted*, No. 2:19-CR-13-1, 2020 WL 2475810 (N.D. W. Va. May 13, 2020) ("[H]ere, Defendant was fleeing from police in his vehicle after failing to yield to officer's attempted traffic stop. Defendant then crashed the vehicle into a ditch. Defendant thereafter left his vehicle running, fled the scene, and hid in an outbuilding nearby . . . Defendant's actions demonstrate his intent to abandon his vehicle and consequentially relinquishing his privacy rights.").

That Price failed to escape does not disprove his intent at the time he abandoned the car. By abandoning the car, Price has no standing to challenge its search.

## CONCLUSION

For all the reasons stated herein, Price's motion to suppress should be denied.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney

By: */s/ Negar M. Kordestani*
NEGAR M. KORDESTANI
Assistant United States Attorney
West Virginia Bar No. 13784
300 Virginia Street East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: negar.kordestani@usdoj.gov

6

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "RESPONSE OF THE UNITED STATES IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS ON FOURTH AMENDMENT GROUNDS" has been electronically filed and service has been made on all counsel of record this the 19th day of September, 2022 upon:

> Lex Coleman, AFPD
> United States Courthouse, Room 3400
> 300 Virginia Street East
> Charleston, West Virginia 25307

By: /s/ Negar M. Kordestani
NEGAR M. KORDESTANI
Assistant United States Attorney
West Virginia Bar No. 13784
300 Virginia Street East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: negar.kordestani@usdoj.gov