IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                                             **Case No. 2:22-cr-00097**

**RANDY PRICE**

**DEFENDANT'S SUPPLEMENTAL REPLY MEMORANDUM
ON *BRUEN* MOTION TO DISMISS**

Comes Randy Price, through his counsel, Senior Litigator AFPD Lex A. Coleman, and submits his supplemental reply to the United States' response to defendant's *Bruen*-based motion to dismiss. In further support of his motion, Mr. Price submits the following:

*1.* Defendant may have made a substantive error in his opening memorandum, suggesting that regulating firearms through manufacturer's serial numbers only arose under the 1968 Gun Control Act. That same year, Congress also amended the National Firearms Act (the Internal Revenue Code of 1954) to require a central registry "of all firearms in the United States", *see* 26 U.S.C. § 5841, as well as the identification of individual firearms through the affixing of serial numbers which could not be "readily removed, obliterated, or altered". *See* 26 U.S.C. § 5842. 26 U.S.C. § 5871 further provided (and still provides today) that "[a]ny person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $ 10,000, or be imprisoned not more than ten years, or both…". *See* Pub.L. 90-618, Title II, § 201, Oct. 22, 1968, 82 Stat. 1230. *See generally, Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722

(1968). NFA firearm registration and ultimately identification requirements were still adopted in the 20th Century - purportedly for purposes of collecting taxes imposed under the Act. That the $ 200 NFA tax was paid by only 27 firearm dealers in 1934, and 22 dealers in 1935, *see Sonzinky v. United States*, 300 U.S. 506, 57 S.Ct. 554, n.1 (1937), however, hardly constitutes a "robust" tradition of regulating firearms through taxation which would support prohibiting Mr. Price from possessing a firearm without a serial number, or being criminally punished for doing so.

*2.* Shortly before Mr. Price's arrest, he was shot while in Wayne County. His being shot was the reason he had loaded up his car to move back to Cleveland, Ohio. He had come to Charleston, West Virginia, on the evening of his arrest to drop off his passenger at a friend's, sleep for a few hours there, and then permanently depart for Ohio after sunrise. Consistent with his statements to officers, he had obtained the pistol found in his vehicle to protect himself – after having recently been the victim of a shooting.

*3.* As a matter of practice, analysis, and argument - over generalization can be easily used to support pretty much any premise. District courts in recent *Bruen* rulings have engaged in this approach,relying on different brief, historical categorical disarmaments of persons "judged a threat to public safety" (such a Tories, Catholics, free blacks, slaves, Native Americans), as apparent analogues justifying Twentieth century firearm regulations despite the Second Amendment's plain text and lack of actual historical tradition of firearm regulation. *See e.g. United States v. Gonzalez,* 2022 WL 4376074 (7th Cir. Sept. 22, 2022)(going so far as to hold that arguing Section 922(g)(1) violates the Second Amendment after *Bruen* is *frivolous*, in context of granting counsel's motion to withdraw); *United States v. Coombes,* 2022 WL 4367056 (N.D. Okl. Sept. 21,

2022); *United States v. Hill*, 2022 WL 4361917 (S.D.Cal. Sept. 20, 2022); *United States v. Perez-Garcia*, 2022 WL 4351967 (S.D. Cal. Sept. 18, 2022); *United States v. Cockerham*, 2022 WL 4229314 (S.D. Miss. Sept. 13, 2022); *United States v. Jackson*, 2022 WL 4226229 (D. Minn. Sept. 13, 2022); *Dykes v. Broomfield*, 2022 WL 4227241 (N.D. Cal. Sept. 13, 2022); *United States v. Burrell*, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022); *United States v. Hampton*, 2022 WL 4016752 (D.N.M. Sept. 2, 2022); *Frey v. Bruen*, 2022 WL 3996713 (S.D.N.Y. Sept. 1, 2022); *United States v. Tilotta*, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022); *United States v. Nutter*, 2022 WL 3718518 (S.D.W.Va. Aug. 29, 2022); *United States v. Alaniz*, 2022 WL 3700834 (D. Idaho Aug.. 26, 2022); *United States v. Ingram*, 2022 WL 3691350 (D.S.C. Aug. 25, 2022); *United States v. Jackson*, 2022 WL 3582504 (W.D. Okl. Aug. 19, 2022); *United States v. Daniels*,___ F.Supp.3d___, 2022 WL 2654232 (S.D.Miss July 9, 2022). Fortunately, there has been at least one exception and that ruling lends further support to defendant's arguments in this matter. *See United States v. Quiroz*, Dkt. No. PE:22-Cr-104-DC, ___F.Supp.3d___, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022)(holding 18 U.S.C. § 922(n) unconstitutional under *Bruen*).

**4.** Defendant reiterates a foundational premise which at this point should be undisputable - which is that every pre-*Heller* firearm regulation in existence today was both enacted and sustained in court challenges based upon rational basis means-end scrutiny of what is now an unconstitutional interpretation of the Second Amendment (i.e. that it's protections did not extend to any individual right of self-defense, and only applied to citizens involved in active militia service – the collectivist interpretation of the Second Amendment). *See Quiroz, supra*, 2022 WL at * 12.

**5.** Contrary to the United States' assertions, there really has been no robust

tradition of permanently disarming convicted felons or persons possessing firearms without manufacturer's serial numbers prior to the Twentieth Century. Nor are there any historical analogues which under *Bruen*'s construction of the Second Amendment would allow such disarmaments now. As noted by Judge Sykes' dissent in *United States v. Skoien*:

> The court also asserts that "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." Majority Op. at 640. This is a considerable overstatement. Only four state constitutions had what might be considered Second Amendment analogues in 1791—Massachusetts, North Carolina, Pennsylvania, and Vermont—and none of these provisions excluded persons convicted of a crime. *See* Heller, 128 S.Ct. at 2802–03; *McDonald,* at 3037; *see also* Eugene Volokh, State Constitutional Rights to Keep and Bear Arms, 11 Tex. Rev. L. & Pol. 191, 197–204 (2006); Amar, *supra* note 2, at 172–73 & nn. 101–02. The sources cited by the court for this very broad proposition simply do not bear it out. To the contrary, two of the cited [*649] works specifically emphasize the *lack* of founding-era evidence that persons convicted of a crime were categorically excluded from possessing firearms. *See* C. Kevin Marshall, Why Can't Martha Stewart Have a Gun?, 32 Harv. J.L. & Pub. Pol'y 695, 728–35 (2009); United States v. McCane, 573 F.3d 1037, 1047–50 (10th Cir.2009) (Tymkovich, J., concurring). The third, Stephen Halbrook's *The Founders' Second Amendment,* does not support the court's suggestion that "many" states during the founding period imposed a general firearms disability on anyone convicted of a crime.
>
> \* \* \*
>
> The better approach is to acknowledge the limits of the scope inquiry in a more straightforward way: The historical evidence is inconclusive at best. As noted in the panel opinion, scholars disagree about the extent to which *felons*— let alone misdemeanants—were considered excluded from the right to bear arms during the founding era. *Compare, e.g.,* Marshall, *supra,* at 714–28 (the founding-era understanding of the right to keep and bear arms for self-defense did not categorically exclude persons convicted of a crime), *with* Don B. Kates & Clayton E. Cramer, Second Amendment Limitations and Criminological [*651] Considerations, 60 Hastings L.J. 1339, 1359–64 (2009) (the founding generation understood that persons convicted of common-law felonies could be disarmed), *and* Don B. Kates, Jr., Handgun Prohibition and the Original Meaning of the Second Amendment, 82 Mich. L.Rev. 204, 266 (1983) (same);

> *see also* Adam Winkler, Heller's *Catch–22,* 56 UCLA L.Rev. 1551, 1562–66 (2009); Lund, *supra,* at 1356–57; Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment,* 62 Tenn. L.Rev. 461, 480 (1995) (collecting originalist scholarship).

614 F.3d 638, 648-649 & 650-651 (7th Cir. 2010). As *Bruen* has stated, the presumption of unconstitutionality is not rebutted by a lack of actual evidence or a "tie." Either the United States proves a robust tradition of disarmament fairly tied to prior felony convictions that overcomes the first Bruen prong's presumption of unconstitutionality, or the Court must declare both 18 U.S.C. §§ 922(g)(1) and (k) invalid under the Second Amendment.

Date:  September 23, 2022.        Respectfully submitted,

                                                     **RANDY PRICE**

                                                     By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/ Lex A. Coleman**
Lex A. Coleman, WV Bar No. 10484
Senior Litigator, Assistant Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia  25301
Telephone: (304) 347-3350
Facsimile:   (304) 347-3356
E-mail: lex_coleman@fd.org