IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

_____
                                  x
UNITED STATES OF AMERICA,         : Criminal Action
                                  :
             Plaintiff,           : No. 2:22-cr-00097
                                  :
v.                                :
                                  :
RANDY PRICE,                      :
                                  :
             Defendant.           :
_____x

**EXCERPT TRANSCRIPT OF PROCEEDINGS**
PRETRIAL MOTIONS HEARING
BEFORE THE HONORABLE JOSEPH R. GOODWIN
UNITED STATES DISTRICT COURT JUDGE
IN CHARLESTON, WEST VIRGINIA
SEPTEMBER 26, 2022


APPEARANCES:

For the Government:          Negar Kordestani, Esq.
                             Assistant United States Attorney
                             United States Attorney's Office
                             P.O. Box 1713
                             Charleston, WV  25326-1713

For the Defendant:           Lex Coleman, Esq.
                             Assistant Federal Public Defender
                             Federal Public Defender's Office
                             Room 3400
                             300 Virginia Street East
                             Charleston, WV 25301


_____
         Kimberly Kaufman, RMR, CRR, CRC
         Federal Official Court Reporter
      300 Virginia Street East, Room 6610
             Charleston, WV 25301

Proceedings recorded by mechanical stenography; transcript
produced by computer.

1          **EXCERPT OF PROCEEDINGS** had before The Honorable

2     Joseph R. Goodwin, Judge, United States District Court,

3     Southern District of West Virginia, in Charleston, West

4     Virginia, on September 26, 2022, at 1:30 p.m., as follows:

5          **(Proceedings held previously not transcribed.)**

6          THE COURT:  Now, let's deal with your motion to dismiss

7     on constitutional grounds.

8          The government tells me that the law is constitutional.

9     Let me ask you a few questions.

10          MS. KORDESTANI:  Yes, Your Honor.

11          THE COURT:  Does the government argue that the

12    conduct regulated in the serial numbers statute is not

13    covered by the plain text of the Second Amendment?

14          MS. KORDESTANI:  That's right, Your Honor.

15          We would argue that the 922(k) charge and the

16    prohibited conduct it covers goes more to addressing

17    conditions and sort of qualifications on the types of

18    firearms.

19          THE COURT:  It says possessing it.

20          If I inherited a gun from my dad and the serial number

21    was obliterated when I inherited it and picked it from his

22    house, that would violate the possession piece of the

23    statute, the very thing he's charged with, right?

24          MS. KORDESTANI:  Yes, Your Honor, you're right.

25          THE COURT:  Mr. Coleman, if the firearm functions

*Kimberly Kaufman, RMR, CRR, CRC (304) 347-3188*

1    exactly the same with the serial number as it does without a

2    serial number, how does the government's requirement that

3    firearms bear serial numbers violate Mr. Price's Second

4    Amendment rights?

5              MR. COLEMAN:  Because by virtue of having one

6    without a serial number he's being charged criminally and

7    being dispossessed of it.

8              THE COURT:  What's your answer to that?

9              MS. KORDESTANI:  I apologize, Your Honor.

10       My answer is he was possessed in the -- he was -- he

11   didn't have that right in the first place because he's a

12   felon who is prohibited from --

13             THE COURT:  Well, you charged him with that.

14             MS. KORDESTANI:  Yes.

15             THE COURT:  This is -- I'm talking about the --

16   and, frankly, the courts are fairly unanimous so far -- I'm

17   not ruling, but courts are fairly unanimous so far that even

18   after *Bruen* the felon in possession statute is still viewed

19   as constitutional by most courts and there's considerable

20   dicta in that case as well, but I'm dealing with the

21   possession charge, which is a separate felony.

22             MS. KORDESTANI:  I think ultimately, Your Honor,

23   then the United States would -- would go to the second part

24   of the analysis under *Bruen*, as I understand it, of whether

25   there is a tradition of -- a historical tradition of

1    regulating what is prohibited in this case as relates to the

2    922(k).

3         There is a historical tradition of --

4              THE COURT:  What -- what is that tradition and

5    where do you find that?

6              MS. KORDESTANI:  Well, Your Honor, I believe it's

7    relating to some of the treatises and analysis of laws that

8    existed either, you know, from, of course, the founding time

9    forward.  And that is very extensive, as you know, and the

10   parties have briefed that very extensively, as you know.

11        To come off the top of my head, I would have to look at

12   my motion, but generally I would state, Your Honor, that

13   states, as well as the United States, have --

14             THE COURT:  Let me ask Mr. Coleman.

15        Why are the government's analogies, the historical

16   record and regulations in place at the time of the founding,

17   insufficient?

18             MR. COLEMAN:  Well, for starters, guns were not

19   registered or had no numbers in 1791 when our Constitution

20   was adopted or in 1792 when the Bill of Rights was ratified

21   by the First Congress.  And within the 15 states that by

22   1792 constituted our country at the time, there was no state

23   constitution and certainly no state statute regulating

24   firearms by saying if you don't have a number on it, you

25   can't have a musket to fight Indians or go kill a deer to

1    eat.  And smiths at that time manufacturing them -- you

2    didn't have the big companies.  You had individual makers.

3    I take that back.  There might have been a few in the U.S.,

4    but they -- obviously everything was much, much smaller back

5    then.

6         And this is a new thing they came up with in the

7    '60s -- actually before that.  Under the NFA initially if

8    they were --

9              THE COURT:  Certainly not in the time frame that

10   the Supreme Court suggests.

11             MR. COLEMAN:  Absolutely not.

12        I mean, if -- if the problem is new in the modern

13   times, it does encourage and authorize looking at

14   analogues, but there aren't any.

15             THE COURT REPORTER:  I'm sorry.  Looking at what?

16             THE COURT:  I'm sorry?

17             THE COURT REPORTER:  Looking at what?

18             MR. COLEMAN:  Analogues.

19        Judge Thomas's majority opinion limited that to

20   situations where the problem didn't exist at the time of the

21   founding and where they hadn't chosen to address the problem

22   a different way.

23        This was initially designed to keep up with certain

24   guns with certain characteristics to charge a tax.  And it

25   was only after 1968 in the 20th century that it became broad

1   based and we got zero to ten going to prison if your gun

2   didn't conform.

3               THE COURT:  What do you disagree with out of what

4   Mr. Coleman just said?

5               MS. KORDESTANI:  Yes, Your Honor.

6       I think that I agree with him in that there has to be a

7   historical analogue in order to uphold the

8   constitutionality, but as Judge --

9               THE COURT:  What would that be here?

10      What's the utility of the government requiring serial

11  numbers on firearms?

12              MS. KORDESTANI:  To be able to identify them,

13  connect them, and connect them to other crimes that may be

14  committed.  And I think that ties back to the overall

15  purpose of what is referred to in the analysis of this

16  historical tradition, Your Honor.

17      It's about citizens -- law-abiding citizens having a

18  right to bear arms.  It's about public safety.  And there's

19  instances where individuals, felons and non-felons alike

20  as -- specifically as relates to the 922(k) charge, it's

21  whether somebody that's law-abiding or not poses -- should

22  have a firearm and if they don't does that pose some kind of

23  danger to public safety.

24      And there is a historical tradition, and as noted in

25  dicta in the *Heller* decision, that there have been

1    regulations and prohibitions of certain parts of society

2    going back to the Founders' era that were not permitted and

3    should not be permitted to have firearms.

4         And to require an exact historical analogue just leads

5    to kind of absurd results.  There's no way I'll ever be able

6    to prove that it --

7              THE COURT:  Wouldn't an analogous regulation need

8    to be something like a requirement that all firearms have an

9    identifiable marking that couldn't be removed or altered?

10             MS. KORDESTANI:  Yes.  And that's supposedly the

11   goal of keeping -- you know, assigning serial numbers to

12   firearms, but there's always a way for people to find --

13             THE COURT:  No, I'm saying back then.

14             MS. KORDESTANI:  Yes, Your Honor, I think that

15   would be the analogue, exactly, to go to that --

16             THE COURT:  Well, Mr. Coleman points out this is a

17   tax law, but assuming that the purpose is to keep guns -- or

18   one of the purposes is to keep firearms out of the hands of

19   criminals, isn't it true that the Founders addressed that

20   through substantially different means?  They limited gun

21   ownership.

22             MS. KORDESTANI:  Yeah, the other means that were

23   different, Your Honor, was, for example, that back in the

24   day, if we're going to go that far back, if you were

25   convicted --

1          THE COURT:  I'm not going that far back.

2          MS. KORDESTANI:  Okay.

3          THE COURT:  I'm saying the United States Supreme

4    Court is going that far back.

5          MS. KORDESTANI:  Forgive me, Your Honor.  The

6    Supreme Court.

7          THE COURT:  The United States Supreme Court after

8    1791.  Bring me back to the 18th century and tell me what it

9    is so that it would allow me to uphold this possessory

10   prohibition constitutional.

11         MS. KORDESTANI:  I think when you boil the

12   defendant's argument down, what is really being asserted is

13   if there's not an exact regulation or prohibition from 1791,

14   then this conduct is not protected.

15         THE COURT:  Well, give me any one that's even

16   analogous in your view.

17         MS. KORDESTANI:  Well, what I wanted to do was

18   give an example in sort of the reverse, Your Honor.

19       You said the courts when it points out give an example,

20   what I'm trying -- one of the things I wanted to point out

21   was the historical landscape of crime and punishment has

22   changed and that is and should be taken into effect.

23       For example, in 1791, or even maybe getting a little

24   closer in time, a convicted felon could be -- could lose

25   their life if they were convicted of a felony.  You could be

1    sentenced to death.

2        So maybe they weren't thinking about regulating their

3    gun possession because you get convicted of a felony, you're

4    executed.  I'm not saying that's the right results, but what

5    I'm saying is the law has changed and evolved.

6            THE COURT:  But I'm supposed to be looking at what

7    the Founding Fathers were thinking --

8            MS. KORDESTANI:  I think you're --

9            THE COURT:  -- the people at that time.  I'm not

10   supposed to wait until the culture is shifting, am I?

11           MS. KORDESTANI:  I think, Your Honor, you

12   rightfully can take into consideration analogues, as

13   Mr. Coleman put it, historical analogues, and there is --

14           THE COURT:  Like what?  Give me one.

15           MS. KORDESTANI:  Okay.  That -- that even not as

16   close in time as to now but prior in time, there were

17   conditions, regulations, put on what kind of firearms you

18   could -- what kind of types of firearms you could possess.

19   So --

20           THE COURT:  Well, dangerous and unusual weapons.

21   That's a different basis than -- obviously there's nothing

22   about putting a serial number on or removing a serial number

23   that makes it dangerous or unusual, is there?

24           MS. KORDESTANI:  I think there is, Your Honor,

25   because --

*Kimberly Kaufman, RMR, CRR, CRC (304) 347-3188*

1           THE COURT:  Okay.

2           MS. KORDESTANI:  Because what happens is without a

3    marking, individuals who are either -- individuals who are

4    already prohibited or those who are not prohibited by virtue

5    of their status in modern age, for example, or even back in

6    time, it somehow makes the gun unidentifiable, not -- more

7    likely to be used in a crime.  And if a crime is committed

8    with that firearm, law enforcement would have a higher --

9    harder time identifying who committed the crime, in fact.

10   So I do think it makes it more dangerous and that's

11   reflected in today's modern guidelines.

12          THE COURT:  I think all the guns I think are

13   dangerous, but I don't know that a gun that shoots and

14   targets and aims and does everything exactly the same way

15   with or without a serial number is any more dangerous or

16   less dangerous because it has a serial number on it.

17       Is the gun itself any more dangerous?

18       You're telling me that the people that have the gun

19   might be more dangerous.

20          MS. KORDESTANI:  Yes, Your Honor.  You're --

21   you're -- that is the point I was trying to make, which

22   the -- the firearm itself may not be any more inherently

23   dangerous by virtue of the serial number removed, but what

24   can be accomplished by, as the Court stated before,

25   possessing it or transporting it or otherwise moving it in

1     interstate commerce can lead to dangerous consequences.

2          And -- and you're right in that, for example, the state

3     of West Virginia, under the West Virginia Code, it's not --

4     having a gun with an obliterated serial number is not an

5     offense -- a criminal offense I should say.

6               THE COURT:  There's a limit on the type of

7     firearm.

8          How does the regulation operate and why?

9               MS. KORDESTANI:  I'm sorry, Your Honor.

10              THE COURT:  If this serial number business --

11              MS. KORDESTANI:  Yes.

12              THE COURT:  -- is a limitation on the type of

13    firearm, which is what you're saying --

14              MS. KORDESTANI:  Yes.

15              THE COURT:  -- you're saying it's dangerous or

16    unusual, how does it -- the regulation operate to make it

17    more dangerous?  How and --

18         Well, go ahead on how.

19              MS. KORDESTANI:  Okay.  Well, I think the

20    regulation operates to make, you know, what can be -- what

21    can be a result of its possession, transfer, use, movement

22    through interstate commerce makes it less dangerous and

23    contributes more to public safety in that a firearm that has

24    markings as they are issued by any --

25              THE COURT:  So almost any regulation that

1    restricts possessory rights would meet your definition?

2              MS. KORDESTANI:  Would -- of -- of being

3    constitutional, Your Honor?

4              THE COURT:  Yeah.

5              MS. KORDESTANI:  I --

6              THE COURT:  In other words, aren't we going in a

7    circle here?

8         If you're saying that if you make it harder to possess,

9    then it will be harder for criminals to have guns to shoot

10   people.

11        That might be true.

12             MS. KORDESTANI:  Yes, I -- I agree that I --

13             THE COURT:  You're the one that brought this

14   second count in this indictment.

15             MS. KORDESTANI:  Yes, Your Honor.

16             THE COURT:  And you read the *Bruen* case when, I

17   take it, you went to the grand jury and asked them to do

18   this, right?

19             MS. KORDESTANI:  Your Honor, I don't know if I had

20   read it at that point or not.

21             THE COURT:  Well, I'm going have to write an

22   opinion on this pretty soon.

23        Anything else you want to say?

24             MR. COLEMAN:  I think you're tuned into it, Your

25   Honor.  I think from your comments you obviously have not

*Kimberly Kaufman, RMR, CRR, CRC (304) 347-3188*

1    just reviewed *Bruen*, you've thought about it.  I've heard a

2    lot of means-ends scrutiny, which is what Judge --

3              THE COURT:  He said we don't do that anymore.

4              MR. COLEMAN:  Right.

5         And what I think a lot of people are finding, and to

6    some it's very repugnant because of their view of firearms,

7    that there's not a strong tradition before the 20th century.

8              I mean, when I read *Heller* the first time and I took a

9    lot of what Justice Scalia said that's dicta because I've

10   been reading the authorities he relied on, I was going,

11   yeah, yeah, I thought when we got rid of rational basis

12   review, we're turning into strict scrutiny where it should

13   have been all along.  A gun's a gun.  It's a tool.  It's

14   actually a distance weapon.  It's a coward's tool.  It can

15   kill people, but so can a car, so can a pen, a knife, a

16   fist.  We're mortal and can be quite delicate.

17             THE COURT:  I want to make a confession.  I have

18   the same problem with reading Justice Scalia.  He gets me

19   going, yeah, yeah, yeah, yeah.

20             MR. COLEMAN:  And then you go and look it up and

21   it's like, well, that's not long-standing at all.

22        I was surprised, to be honest.

23             THE COURT:  I've got a real problem with -- well,

24   for you not a problem.

25        I've got a real problem for the government with your

1    argument that this statute is unconstitutional.  I think

2    they've got a really difficult problem with Count Two of

3    this indictment.

4        I'm going take a few days to think about it.

5           MR. COLEMAN:  I wish you felt that way about Count

6    One.

7           THE COURT:  Well, I'm not ruling, but I don't

8    think I do.

9        Anything further to come before the Court today?

10          MS. KORDESTANI:  Just very briefly on the *Bruen*

11    issue, Your Honor.

12          THE COURT:  Okay.

13          MS. KORDESTANI:  I think ultimately it's nice to

14    be around really smart lawyers and do the intellectual

15    debate.

16        I think as much as we're being forced under this

17    decision to look back in time, and quite frankly I find it

18    really hard even though I know how to analyze the law, of

19    course, the Court and Mr. Coleman, who's a very smart lawyer

20    do, but we're not frozen in time.  Crime, punishment,

21    history, not frozen in time.  And these kind of regulations,

22    I would submit, Your Honor, including the ones that due to a

23    degree in this case because I've charged it that way as a

24    possession of a firearm with an obliterated serial number,

25    ultimately we look at public safety, who is supposed to be

1    possessing the weapons or not.  And I would submit given

2    that kind of analysis, keeping that in mind, that the

3    922(k), as well as the 922(g), are best.

4              THE COURT:  You think you can write a good opinion

5    that says that?

6              MS. KORDESTANI:  I don't think I'm going to write

7    a better opinion than you, but I hope it's going to go my

8    way so --

9              THE COURT:  Well, I'll wait and see what's pending

10   when I get my opinion done.

11             MS. KORDESTANI:  Thank you, Your Honor.

12             THE COURT:  Anything further?

13             MR. COLEMAN:  As far as (g)(1), Your Honor, when I

14   made the comment in the supplemental submission about

15   overgeneralization, it was because -- not to be snarky at

16   all as much as I've heard that Tories were disarmed.  Well,

17   during the Revolutionary War they were.  Catholics were

18   disarmed in England when there was the unrest and you had

19   the Protestant and Anglican governments.  Slaves were

20   disarmed in the United States until the American Civil War.

21        Those are not fair analogues for a convicted felony

22   disarmament, particularly when only four out of the original

23   11 to 13 colonies even had any analogue themselves to the

24   Second Amendment, much less prohibiting felons.

25        The comment in *Bruen* about the social balancing already

*Kimberly Kaufman, RMR, CRR, CRC (304) 347-3188*

1    having been done is important.  If we want to do an article

2    of the states, if we want to change our Constitution, there

3    are mechanisms available to do that, but with the *Bruen*

4    ruling, even in light of Justice Kavanaugh and some of

5    Justice Scalia's comments, the majority opinion was what

6    Judge Thomas wrote.

7         And I was shocked at the dearth of law before the 20th

8    century that dealt with a lot of this, but then if you think

9    about it what was happening in the '30s?

10             THE COURT:  Nobody thought that *Heller* would come

11   along.

12             MR. COLEMAN:  Oh, I've been hoping for it since

13   law school.  I didn't think it would come, but I was rooting

14   for it really hard.

15        Thank you, Your Honor.

16             THE COURT:  You're welcome.

17        All right.  Court's adjourned for the day.

18

19

20

21     (Proceedings concluded at 3:00 p.m., September 26, 2022.)

22

23

24

25

```
 1   CERTIFICATION:

 2        I, Kimberly Kaufman, Official Court Reporter, certify

 3   that the foregoing is a correct excerpt transcript from the

 4   record of proceedings in the matter of United States of

 5   America, Plaintiff v. Randy Price, Defendant, Criminal

 6   Action No. 2:22-cr-00097, as reported on September 26, 2022.

 7

 8   s/Kimberly Kaufman, RMR, CRR, CRC          October 3, 2022

 9   Kimberly Kaufman, RMR, CRR, CRC                   DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*Kimberly Kaufman, RMR, CRR, CRC (304) 347-3188*